UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FACTORY SALES AND ENGINEERING, INC., d/b/a FSE ENERGY, a Louisiana corporation,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>NIPPON PAPER INDUSTRIES USA CO., LTD., a Washington corporation,<br><br>    Defendant/Counterclaim Plaintiff. | Case No. 3:14-CV-05899<br><br>ORDER ON NIPPON PAPER INDUSTRIES USA CO., LTD.'s MOTION TO DISMISS OPTIMUS INDUSTRIES, LLC D/B/A CHANUTE MANUFACTURING COMPANY'S CROSSCLAIMS |
| FACTORY SALES AND ENGINEERING, INC., d/b/a FSE ENERGY, a Louisiana corporation,<br><br>    Third Party Plaintiff,<br><br>v.<br><br>OPTIMUS INDUSTRIES, LLC d/b/a CHANUTE MANUFACTURING COMPANY, a Delaware limited liability company,<br><br>    Third Party Defendant. | |

1    This matter comes before the Court on Defendant/Counterclaimant Nippon Paper Industries USA, Co.'s ("Nippon's") Motion to Dismiss Third Party Defendant/Claimant Optimus Industries, LLC d/b/a Chanute Manufacturing Company's ("Chanute's") Crossclaims.  Dkt. 43, 44. *See* Dkt. 35. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein. Dkt. 49, 50.

BACKGROUND

Nippon contracted on November 3, 2012 with Plaintiff, Factory Sales and Engineering Inc., d/b/a FSE Energy ("FSE") for the design, supply, and installation of a boiler at Nippon's facilities in Port Angeles, Washington. FSE, the general contractor for the project, enlisted a subcontractor, Chanute, for the manufacture of a "mud drum" for the boiler. Dkt. 35, at ¶¶ 9, 10. In early 2014, cracks in the mud drum and boiler were discovered, and a dispute arose over the responsibility for the damage. Dkt. 35, at ¶11.

At the center of the dispute is a contract signed by Nippon and FSE ("The Contract") (Dkt. 44). FSE filed suit against Nippon for breach of the Contract (Dkt. 1), later interpleading Chanute as a Third Party Defendant. Dkt. 28. Chanute filed a claim for declaratory judgment, as a counterclaim against FSE and a crossclaim against Nippon, seeking a declaration that Chanute is a third party beneficiary to the Contract. Dkt. 35, at 6, 7. Chanute also alleges an additional crossclaim against Nippon, a "Continent claim for Breach of Duty to Procure Insurance [to benefit Chanute]." Dkt. 35, at 6-9.

For the sake of brevity, the Court will not quote the Contract in its entirety. *See* Dkt. 44. The Contract is referred to in the Complaint, and the parties agree to its incorporation here so the Court will consider it. Dkt. 32, at 12. Nippon relies primarily on two portions of the Contract.

2

First, Nippon relies on the "Definitions" section, which defines "Contract" as follows:

> [The Contract is] the entire agreement between Owner [Nippon] and Contractor [FSE] as evidenced by the Contract Documents. The Contract represents the entire and integrated agreement between the Owner and Contractor . . . The Contract **Documents shall not be construed to create a contractual relationship of any kind** . . . (ii) **between the Owner and a Subcontractor** or a Sub-subcontractor." Dkt. 44, at 10 (emphasis added).

Second, Nippon relies on a section entitled, "Contractor's Responsibilities and Rights," and a subheading entitled, "Subcontractors and Suppliers," wherein the Contract states:

> **Nothing contained in the Contract Documents shall create any contractual relationship between any Subcontractor or Supplier and Owner**, or any obligation on the part of Owner to pay . . . any Subcontractor or Supplier, except as may otherwise be required by law. **No provision of the Contract shall be for the benefit of any party other than Owner and Contractor**." Dkt. 44, at 26 (emphasis added).

Chanute points to a subheading entitled, "Owner's Builder's Risk Insurance," where the Contract states that "Owner [Nippon] has purchased and will maintain at its expense . . . Builder's Risk property insurance on an "all-risk" or equivalent policy . . . . This insurance shall include interests of the Owner, Contractor [FSE], and **Subcontractors**." Dk. 44, at 17 (emphasis added). Similarly, under a subheading, "Owner's Loss of Use Insurance," the Contract provides that:

> "The Owner [Nippon] shall purchase and maintain . . . such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner **waives all rights of action against the Contractor, Subcontractor**, and Sub-subcontractors for loss of use[.]" Dkt. 44, at 18.

Finally, Chanute directs the Court to the "Waivers of Subrogation" subheading, wherein which the Contract states that:

> "[t]he Owner [Nippon] and Contractor [FSE] waive all rights against (1) each other and any of their . . . Subcontractors . . . <u>WHETHER CAUSED IN WHOLE OR IN PART BY THE FAULT OR NEGLIGENCE OF THE OWNER, CONTRACTOR, SUBCONTRACTORS . . . OR ANYONE FOR WHOSE ACTS ANY OF THEM MAY BE LIABLE</u>." Dkt. 44, at 19 (underlining in original).

3

The Contract contains a forum clause directing that the Contract should be construed in accordance with Texas law. Dkt. 44, at 52.

## STANDARD OF RELIEF

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007)(*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

## ARGUMENT

Because the parties agree that Chanute is not a signatory to the Contract between Nippon and FSE, Chanute's crossclaims against Nippon depend on Chanute's status as a third party beneficiary to the Contract. *See* Dkt. 35, at 6-9. Nippon argues that under both Texas and Washington law Chanute is not a third party beneficiary to the Contract, because the Contract shows no intent by the parties to benefit a third party, but rather shows an intent and agreement to exclude all other parties. *See* Dkt. 44, at 10, 26.

Chanute concedes that there are general provisions of the Contract that exclude third parties to the Contract, but argues that specific provisions of the Contract modify and qualify the general ones, and the parties intended to benefit Chanute. Dkt. 49, at 6-8, 12-16. Chanute argues in the alternative that if the Contract's terms conflict, the Contract is ambiguous, and dismissal at this early stage is premature. Dkt. 16-18.

In reply, Nippon argues that the Contract's provisions do not conflict, but rather disclaim any obligation by Nippon and FSE to assume any obligation to a third party. Dkt. 50, at 5. For example, Nippon states, subcontractors are omitted from notice and payment provisions in the Contract, and while subcontractors are referenced in the Contract, whether a Contract indirectly benefits a third party is not the same as a party's direct assumption of an obligation to do so. Dkt. 50, at 6-8. Finally, Nippon contends, the cases Chanute cites for the proposition that ambiguity in a Contract warrants more discovery rather than dismissal are inapposite, because none of them concern the rights of a third party beneficiary. Dkt. 60, at 8-10.

Under both Washington and Texas law, when interpreting a written contract, the intent of the contracting parties controls. *Dice v. City of Montesano,* 131 Wn.App. 675, 683–84 (2006); *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). This includes analyzing contracts for whether a third party is a beneficiary to the contract. *Donald B. Murphy Contractors, Inc. v. King County*, 112 Wn.App. 192, 196, 197 (2002); *MCI Telcommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W. 2d 647, 651 (Tex.1999). Washington follows the "objective manifestation theory" of contract interpretation, under which determining the parties' intent begins with a focus on the reasonable meaning of the contract language. *Hearst Commc'ns, Inc. v. Seattle Times Co.,* 154 Wn.2d 493, 503 (2005). Similarly, under Texas law, contracts with

definite or certain legal meaning are enforceable. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Contracts are considered as a whole, interpreting particular language in the context of other contract provisions. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 669–70 (2000); *Mescalero Energy Inc. v. Underwriters Indemn. General Agency, Inc.*, 56 S.W.3d 313, 320 (2001). Words are generally given their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *Hearst v. Seattle Times, Co.,* 154 Wn.2d 493, 504 (2005); *Coker*, 650 S.W.2d at 393.

If a contract provision's meaning is uncertain or is subject to two or more interpretations, the provision is ambiguous. *Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co.*, 134 Wn.2d 413, 428 (1998); *Glover v. National Insurance Underwriters,* 545 S.W.2d 755, 761 (Tex.1977). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; the interpretations must be reasonable. *Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co.*, 134 Wn.2d 413, 428 (1998); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994). Whether a contract is ambiguous is a question of law that courts must decide in light of the circumstances under which the contract was entered, and courts may admit extrinsic evidence to determine the meaning of the contract. *Findlay v. United Pacific Ins. Co.,* 129 Wn.2d 368, 374 (1996); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

The Court need not address what the forum law applies to the Contract in this case, because the analysis is the same under both Washington and Texas law. *See supra*. Applying the

law, the Contract has contradicting terms. In two places the Contract plainly states that no one except Nippon and FSE has any right of action under the Contract ("The Contract Documents shall not be construed to create any contractual relationship of any kind . . . between the Owner and a Subcontractor"; and "nothing . . . shall create any contractual relationship between any Subcontractor . . . or any obligation . . . of the owner").  Dkt. 44, at 10, 24. However, the Contract also requires that Nippon obtain builder's risk insurance that "shall include interests of . . . Subcontractors." Dkt. 44, at 17. The Contract also contains a subrogation clause in which Nippon and FSE waive their rights against each other and Subcontractors, and the Contract requires that Nippon obtain loss of use insurance and  "waiv[e] all rights against . . . Subcontractors . . . for loss of use of [Nippon's] property. Dkt. 44, at 18, 19. Considering these terms within the Contract in its entirety, the Contract appears on its face to be contradictory.

     Considering the Contract in its entirety, there are at least two reasonable interpretations to resolve these contradicting terms. On the one hand, the Court could, as Chanute suggests, adopt the specific provisions (e.g.- "waives all rights against Subcontractors")  as controlling over general ones (e.g.- "shall not be construed to create any contractual relationship"). Dkt. 49, at 14-16 (citing *Nu State Energy, LP v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex.Ct.App.2013).On the other hand, given the directness and clarity with which the signatory parties included language to exclude all other parties, the Contract, while referencing other parties such as subcontractors, arguably does not give any protections to anyone except the signatory parties under any circumstances. Dkt.  43, at 9, 10. These interpretations are both reasonable, but they conflict. Because they conflict, there is ambiguity, and the Court may consider extrinsic evidence to ascertain the parties' intent.

Nippon's motion comes early in the proceedings as a Fed. R. Civ. P. 12b(6) motion—without the completion of discovery—so the Court has only considered the pleadings and the Contract. Extrinsic evidence may yet shed light on the Contract's proper interpretation. The Court should deny Nippon's motion to dismiss to dismiss for failure to state a claim.

\* \* \*

THEREFORE, the Court having considered Nippon's Motion to Dismiss Chanute's Crossclaims (Dkt. 43), the motion is **DENIED**.

DATED this 7th day of July, 2015.

*/s/ Robert J. Bryan*

ROBERT J. BRYAN
United States District Judge